# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | |
|---|---|
| REMONICA B. WILSON, § | |
| *Plaintiff*, § | |
| § | |
| V. § | NO. 9:13-CV-64 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| *Defendant*. § | |

## MEMORANDUM OPINION AND ORDER ON COMMISSIONER'S DECISION

In accordance with 28 U.S.C. § 636(c), the Local Rules for the United States District Court for the Eastern District of Texas, the parties' consent and order of the District Court, the above-captioned civil action is before the undersigned United States Magistrate Judge for consideration of all matters and entry of judgment. Plaintiff, proceeding *pro se*, instituted this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of the Social Security Administration's (hereafter "Commissioner") decision regarding her Social Security benefits.

**I. Background**

Plaintiff applied for disability insurance benefits (DIB)[1] on September 7, 2010 (Tr. 108-113), claiming a disability onset date of July 26, 2009 (Tr. 131) due to sickle cell, depression and anxiety (Tr. 135). Following agency denials of her applications (Tr. 52-64), Plaintiff requested and received

---

[1] Supplemental Security Income ("SSI"), authorized by Title XVI of the Social Security Act, provides an additional resource to the aged, blind, and disabled to assure their income does not fall below the poverty line. Disability insurance benefits ("DIB"), authorized by Title II of the Social Security Act, provides income to individuals who are forced into involuntary, premature retirement. Eligibility for SSI requires proof of indigence and for DIB requires proof of insured status. Additionally, applicants seeking benefits under either program must prove disability within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2014).

an evidentiary hearing before an administrative law judge ("ALJ") (Tr. 65-67, 24-49). ALJ Churchill ("ALJ Churchill" or "the ALJ") convened a hearing on September 10, 2012 (Tr. 24-49). Testimony was heard from the plaintiff and vocational expert ("VE") Thomas Irons. *Id*. Ms. Wilson waived her right to representation and appeared at the hearing without an attorney or representative.

On October 23, 2012, ALJ Churchill issued his findings. (Tr. 7-23). The ALJ found that the plaintiff has the severe impairments of sickle cell and affective mood disorders. (Tr. 12, Finding No. 3). The ALJ next found, however, that Plaintiff does not have an impairment or combination of impairments which meet or medically equal the severity of listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 for presumptive disability. (Tr. 12, Finding No. 4). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work. (Tr. 13, Finding No. 5). ALJ Churchill further concluded that Ms. Wilson an sit for 6 hours in an 8 hour work day, can stand for 6 hours in an 8 hour work day, and can lift/carry 10 pounds frequently and 20 pounds occasionally. *Id*. He found that she can engage in occasional posturals and that she should avoid heights. *Id.* Regarding the plaintiff's mental limitations, the ALJ concluded that she can concentrate and respond appropriately and she can perform detailed tasks. *Id*.

The ALJ next found that the plaintiff was capable of performing her past relevant work as an admissions clerk, classified as sedentary semi-skilled work. (Tr. 17, Finding No. 6). Therefore, the ALJ finally concluded that the plaintiff had not been under a disability as defined by the Social Security Act from July 26, 2009, the onset date, through the date of his decision. (Tr. 17, Finding No. 7). The plaintiff appealed that decision. The Appeals Council of the Social Security Administration (SSA) affirmed ALJ Churchill's decision, making it the final decision of the Commissioner. (Tr. 3-5).

Plaintiff then filed her appeal in this federal court, seeking judicial review of the Commissioner's decision denying the application for Social Security disability benefits. *See Complaint* (doc. #1). The parties have since filed their briefs (doc. #20, doc. #21) and the Court has received the transcript. Accordingly, the case is ripe for review.

**II. Judicial Review**

United States district courts may review decisions of the Commissioner. *See* 42 U.S.C. § 405 (2011). However, Congress limits the scope of judicial review to determinations of whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal citations omitted). It is more than a mere scintilla but less than a preponderance. *Id.* When the Commissioner applies proper principles and her decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 230 (1938)); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett*, 67 F.3d at 565-66. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *see also Ripley*, 67 F.3d at 555 (stating that the court may not substitute [its] judgment for that

of the Secretary). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III. Law Governing Disability Determination and the ALJ's Findings

The law requires the Commissioner to make individualized determinations of whether claimants have disabilities that make them eligible to receive benefits authorized under the Social Security Act. *See Heckler v. Campbell*, 461 U.S. 458, 466 (1983). To satisfy this duty, the Commissioner utilizes a five-step sequential evaluation analysis. When a claimant is found disabled or not disabled at any step, remaining steps are not considered. 20 C.F.R. § 404.1520(a)(4) (2014). This procedure has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The five steps - with explanatory parenthetical commentary - generally are as follows:

1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered and the inquiry ends.)

2. The Commissioner determines *whether an applicant has a severe impairment or*

*combination of impairments.* (If not, the inquiry ends and a finding of non-disability is entered.)

3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings")[2]. (If so, disability is presumed and benefits are awarded. If not, the analysis continues.)

4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment.* (If so, a prima facie case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform.* (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); 20 C.F.R. § 404.1520(a)-(f) (2014).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may

---

[2] Appendix I, Subpart P, Part 404 of the Regulations lists impairments and indicators of medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2014). A person whose impairment meets or equals an impairment in the Listing is presumptively disabled. 20 C.F.R. § 404.1520(d) (2014); *see* Soc. Sec. R. 88-3c (1988), 1988 WL 236022, at *7.

be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**IV. Points of Error**

Here, Plaintiff alleges two general points of error, as follows:

(1) the Plaintiff contends she "has established by objective medical evidence a mental and physical disability in accordance with the Listings of Impairments"; and

(2) the Commissioner and ALJ "did not properly consider all of the element[s] of subjective evidence."

**V. Discussion and Analysis**

    A.    <u>Whether Plaintiff Established that Her Impairment(s) Meet the Listings</u>

The plaintiff's first point of error suggests that the ALJ erred at step three when he concluded that Ms. Wilson did not meet a Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1, entitling her to presumptive disability. As stated above, Plaintiff has the burden of proof at step three to show that she has a mental and physical impairment which meets a Listing.

The ALJ concluded that the "signs, symptoms and history of treatment presented in the evidence of record are inconsistent with any impairment of listing-level of severity." (Tr. 12). Regarding plaintiff's mental impairments, the ALJ discussed Listing 12.04 and 12.06 and analyzed the appropriate factors under those Listings. *Id. See also* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 and 12.06. Listing 12.04 applies to affective disorders and Listing 12.06 governs anxiety-related disorders. *See* §§ 12.04 and 12.06.

To meet Listing 12.04, the regulations require that the claimant meet a level of severity. *See*

§ 12.04. The claimant must satisfy *both* paragraph A and B of Listing 12.04 *or* Paragraph C. *Id*. Paragraph A requires medically documented persistence of one of several symptoms.[3] Paragraph B requires that the symptoms result in at least two of the following: (1) marked restrictions of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* § 12.04, Paragraph B. In the alternative, Paragraph C requires "[m]edically documented history of a chronic affective disorder of at least 2 years duration that has cause more than a minimal limitation ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and one of three symptoms listed in Paragraph C. *Id.* at Paragraph C.

The ALJ's opinion demonstrates that he evaluated Ms. Wilson's mental impairments under the Listings, addressing the levels of criteria enumerated in Listing 12.04. He discussed the plaintiff's mild restrictions in daily living, including her ability to do chores; her moderate difficulties in social functioning; her moderate difficulties in maintaining concentration, persistence and pace; and noted that she had experienced no episodes of decompensation which have been of extended duration (Tr. 13). These findings on Paragraph B of Listing 12.04 are supported by substantial evidence in the record, including the findings of Dr. Barron and Dr. Geary.

On November 30, 2010, Dr. Verna L. Barron, Ph.D., conducted a clinical interview and mental status examination with Ms. Wilson (Tr. 267-269). Dr. Barron concluded that Ms. Wilson's

---

[3]Examples of the symptoms for affective disorder required by Paragraph A include anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating. *See* 20 C.F.R. Part 404, Appendix 1, § 12.04, Paragraph A.

thoughts seemed logical, she was oriented, and her memory was intact (Tr. 268). Barron also found that the plaintiff's attention and concentration were somewhat compromised and her judgment is at least slightly compromised. *Id.* Dr. Barron also noted that Ms. Wilson clearly appeared to exaggerate her deficits during most of the mental status examination. *Id.*

On January 5, 2011, Thomas Geary, Ph.D., issued his report of a psychiatric review conducted on the claimant (Tr. 270). He found that Wilson had affective disorders coexisting with nonmental impairments. *Id.* Dr. Geary concluded that a mental impairment is present that does not precisely satisfy the diagnostic criteria listed in Paragraph A of Listing 12.04. *See id.*; *Compare* 20 C.F.R., Part 404, Appendix 1, § 12.04, Paragraph A. He found that she has mild restriction in daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no episodes of decompensation, each of extended duration (Tr. 280). Dr. Geary finally concluded that there was no evidence establishing that Ms. Wilson has a medically documented history of affective disorder of at least 2 years' duration that has cause more than a minimal limitation of ability to do any basic work activity with signs or symptoms currently attenuated by medication or psychosocial support, and any one of the other symptoms listed in Paragraph C of Listing 12.04 (Tr. 281). This evidence, along with Dr. Barron's findings, clearly supports the ALJ's findings at step three regarding Plaintiff's mental impairments under the Listings.

Although the ALJ does not specifically address the Listing for the sickle cell impairment at step three, substantial evidence supports the conclusion that plaintiff failed to meet her burden in establishing that she meets the Listing for sickle cell. Listing 7.05 specifically requires the following:

> "A. Documented painful (thrombotic) crises occurring at least three times during the 5 months prior to adjudication; or
> B. Requiring extended hospitalization (beyond emergency care) at least three times during the 12 months prior to adjudication; or
> C. Chronic, severe anemia with persistence of hematocrit of 26 percent or less; or
> D. Evaluate the resulting impairment under the criteria for the affected body system."

20 C.F.R. Part 404, Subpart P, Appendix 1, § 7.05 (Listing for "sickle cell disease, or one its variants.") The record lacks evidence of documented painful thrombotic crises, extended hospitalizations, or evidence of chronic, severe anemia. On January 31, 2011, Dr. Bramharm Reddy, Ms. Wilson's regular hematologist, noted that she has done fairly well with sickle cell disease, she has not required any hospitalization recently, and has only needed intermittent narcotic pain medications for pain control (Tr. 304.) He noted again in 2012 that she has done fairly well with occasional hospital admissions (Tr. 444). A review of the objective medical records reveals no sickle cell symptoms reaching the level of severity required by Listing 7.05. *See id*; *see also* Tr. at 304, 375, 381, 385, 390, 395, 398-99, 407, 411, 416, 420, 450). Substantial evidence accordingly supports the finding that the plaintiff has not shown that her impairment meets or medically equals the specific requirements of the sickle cell Listing.

Furthermore, the plaintiff's brief fails to point to specific medical evidence supporting a finding that her impairments meet the Listings at issue. In fact, she does not identify which Listing she alleges the ALJ erred in considering. The majority of her brief focuses on her subjective assessment of her symptoms and the personal problems that her impairments cause. *See Plaintiff's Brief* (doc. #20), at pp. 3-6. She references her medications and lab results, but this medical information does not comport with the specific criteria of evidence required to meet the Listings at issue. She does not reference specific objective medical evidence establishing that her

impairments have affected her in the specific manner required by the Listings. For an impairment to meet or medically equal a listing, "the claimant must provide medical findings that support *each* of the criteria for the equivalent impairment condition." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (emphasis added); *see also* 20 C.F.R. § 404.1526(a) (2014). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Furthermore, the ALJ does not err by failing to specifically consider a listing if the record evidence shows that the claimant did not meet the criteria. *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008). Plaintiff's argument alone - absent objective medical evidence - does not substantiate a claim of meeting or equaling a Listing. *See Waymire v. Comm'r of Soc. Sec. Admin.*, No. 6:10-CV-510, 2011 U.S. Dist. LEXIS 143458, at *11 (E.D. Tex. Nov. 2, 2011) (Guthrie, J.); *adopted by* 2011 U.S. Dist. LEXIS 139801 (Dec. 5, 2011).

Plaintiff's fails to establish how the ALJ erred in considering the criteria of the applicable listings and she does not point to objective medical evidence contradicting the ALJ's findings at step three. She has, accordingly, failed to meet her burden in establishing that her impairments, singularly or in combination, are severe enough to meet or equal the applicable requirements set forth in the Listings, thus entitling her to a presumptive finding of disability. This point of error is accordingly overruled.

      B.     <u>The ALJ's Consideration of the Plaintiff's Subjective Complaints</u>

Subjective symptoms standing alone, absent supporting medical evidence, are insufficient to support a disability finding. *See Salgado v. Astrue*, 271 F. App'x 456, 460 (5th Cir. 2008) (per curiam) (citing SSR 96–7P and 20 C.F.R. § 404.1529). The ALJ is the fact finder and may determine the credibility of witnesses and medical evidence. *See Greigo v. Sullivan*, 940 F.2d 942,

945 (5th Cir. 1991) (per curiam). The regulations provide that when making a disability determination, the adjudicator must consider subjective symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a) (2014). The ALJ is required to follow a two-step "objective-subjective" process in evaluating the claimant's subjective evidence and the applicant's credibility, if a credibility determination is necessary. *See Salgado*, 271 F. App'x at 458. Under this two-step process to evaluate an applicant's subjective claims, the adjudicator must first determine whether there is an impairment that reasonably produced the symptoms of which the claimant complains. *Id.* If the adjudicator finds no impairment, the individual is not disabled. *Id.* If an impairment is identified, the adjudicator then considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the credibility of the applicant's claims about symptoms. *Id.*

Here, at the first step - the objective evaluation - the ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. 14). However, as for the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms, the ALJ concluded that they "are not credible to the extend they are inconsistent with the above residual functional capacity assessment." *Id.* The ALJ went on to state that "the record fails to document any neurological deficits, significant orthopedic abnormalities, or serious dysfunction of bodily organs, which would preclude the performance of all work-related activities." *Id*.

20 C.F.R. § 404.1529(c)(3) provides a non-exclusive list of seven factors to be considered in making the second determination as to the credibility of a claimant's subjective complaints. *See*

20 C.F.R. § 404.1529(c)(3); *Ashford v. Commissioner*, No. 6:11CV155, 2013 WL 598902, 2013 U.S. Dist. LEXIS 29651, at *13-*14 (E.D. Tex. March 4, 2013) (Love, J.). Specifically, this section states that factors relevant to the claimant's symptoms, such as pain, which the adjudicator will consider, include:

    (i)    claimant's daily activities;

    (ii)    location, duration, frequency and intensity of pain or other symptoms;

    (iii)    precipitating and aggravating factors;

    (iv)    type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms;

    (v)    treatment, other than medication, undertaken to relieve pain or other symptoms;

    (vi)    any other measures used to relieve pain or other symptoms; and

    (vii)    other factors concerning functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3) (2014). Although an ALJ must give specific reasons for a credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Ashford,* 2013 U.S. Dist. LEXIS 29651, at *14 (quoting *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (Hines, J.) (adopted by *Prince v. Barnhart*, 418 F. Supp. 2d 863 (E.D. Tex. 2005)).

The record reveals that the ALJ considered the enumerated factors as follows:

*Factor 1 (daily activities)*:

The ALJ noted that the plaintiff is able to drive, care for her kids and perform household chores (Tr. 17). She spends most of her days watching television or sleeping. *Id.*

*Factor 2 (location, duration, frequency and intensity of symptoms)*:

The ALJ noted that the claimant's sickle cell crisis had been well-controlled and that the examinations of the record of the claimant's allegations of pain failed to reveal any evidence that the claimant's impairments produce the ongoing symptoms alleged by the claimant. *Id.* Additionally, he found that the results of the psychological evaluation did not disclose any evidence that the claimant experienced a mental disorder which significantly affected her ability to perform the mental requirements of basic work-related activities. *Id.*

*Factor 3 (precipitating and aggravating conditions)*:

There is no indication that the plaintiff complained of aggravating conditions.

*Factor 4 (type, dosage, effectiveness and side effects of medications)*:

The ALJ noted a lack of any objective evidence of record that the claimant experiences any disabling side-effects from prescribed medications.[4] *Id.*

*Factor 5 (treatment, other than medication, to relieve symptoms) and Factor 6 (other measures to relieve symptoms)*:

There is no mention of treatment other than medication to relieve symptoms.

---

[4] In her brief, Plaintiff complains that the side effects of her medications prevent her from being able to drive to and from work. *See Plaintiff's Brief*, at p. 2. This statement is contradicted by the objective evidence in the record showing that she was able to drive to and from her doctor appointments, at a minimum.

*Factor 7 (other factors)*:

The ALJ's discussion does not take any other factors into consideration other than those stated above.

The ALJ therefore based his credibility determination on several of the enumerated factors when they were relevant. Additionally, the record shows that he considered and discussed the objective evidence as compared to the plaintiff's subjective statements. For example, he notes that at least twice she was assessed with sickle cell *without* crisis (Tr. 14-15). He uses this information in disregarding Dr. Penny Jeffery's opinion that the claimant was unable to work (Tr. 15, Tr. 405). As noted by the Commissioner's brief, it also appears that Dr. Jeffery's statements are inconsistent with the medical evidence as a whole and they appear to be primarily based on plaintiff's subjective reports to Dr. Jeffery (Tr. 405). As the ALJ points out, the claimant appeared well-developed and well-nourished during her examinations and was reported to have done "fairly well" on at least two occasions by her treating hematologist. *Id.* Considering the medical evidence as a whole, as compared to plaintiff's subjective allegations about her symptoms and their effectsm the Court concludes that the ALJ did not err in assessing the plaintiff's credibility and her subjective complaints under SSR 96-7p and the applicable regulations. The ALJ's decision to afford diminished weight to the plaintiff's subjective complaints is further supported by Dr. Barron's report that the claimant "clearly exaggerated" her deficits during the mental status examination. *Id.* The ALJ must consider a claimant's subjective complaints, but may find that those complaints are not credible or exaggerated in light of the objective medical and other evidence of record. *See Parker v. Astrue*, No. 11-294-SCR, 2012 WL 5384821, 2012 U.S. Dist. LEXIS 156606, at *20

(M.D. La. Nov. 1, 2012). The ALJ is not required to give subjective evidence precedence over objective evidence. *Id.* (Internal citations omitted).

The plaintiff failed to establish that the ALJ erred in his method of weighing plaintiff's subjective complaints. The ALJ's discussion sufficiently articulates reasons for according diminished weight to plaintiff's subjective complaints and the record contains substantial evidence supporting the ALJ's credibility determination. Plaintiff's point of error, therefore, fails.

### VI. Conclusion and Order of the Court

Substantial evidence supports the ALJ's finding at step three regarding the applicable listings, his credibility analysis, and his evaluation of Plaintiff's treating physicians. Therefore, the undersigned concludes that the Commissioner did not err in her decision denying the plaintiff's application for disability benefits. The Court accordingly **ORDERS** that the Commissioner's decision is **AFFIRMED** and this above-entitled social security action is **DISMISSED**, with prejudice. The Court will enter final judgment separately.

**SIGNED this the 29th day of September, 2014.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE